UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――

UNITED STATES OF AMERICA,

v.                                                          10-cr-219-WMS-HKS

TONAWANDA COKE CORPORATION,          **MOTION FOR JUDGMENT OF
                                                            ACQUITTAL OR, IN THE
et al.,                                                     ALTERNATIVE, MOTION FOR
                                                            A NEW TRIAL AND
Defendants.                                          MEMORANDUM OF LAW IN
                                                            SUPPORT THEREOF**

―――――――――――――――――――――――――

Defendants Tonawanda Coke Corporation ("Tonawanda Coke") and Mark L. Kamholz (collectively, the "Defendants"), through undersigned counsel, and, pursuant to FED. R. CRIM. P. 29(c)(1), hereby move this honorable Court for a judgment of acquittal as to Counts One through Five, Nine and Sixteen through Nineteen in the Indictment for which Defendants were convicted at the close of the presentation of all the evidence. Under FED. R. CRIM. P. 29, a motion for judgment of acquittal must be granted for any charged offense "for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a); *see also* FED. R. CRIM. P. 29(c)(1) (allowing for such motions after jury verdicts). A Rule 29 motion should be granted when the court concludes that "there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006). The Court must view the evidence presented at trial in the light most favorable to the Government, and draw all reasonable inferences in its favor. *United States v. Cote,* 544 F.3d 88, 98 (2d Cir. 2008).

In the alternative, Defendants move for a new trial as to Counts One through Five, Nine, Eleven through Fifteen and Seventeen through Nineteen, pursuant to Fed. R. Crim. P. 33(a),

which provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." In deciding a Rule 33 motion, "[t]he test is whether it would be a manifest injustice to let the guilty verdict stand." *United States v. Lin Guang*, 511 F.3d 110, 119 (2d Cir. 2007) (internal quotation marks omitted). A motion for a new trial should be granted where there is a real concern that an innocent person may have been convicted. *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). "Although a trial court has broader discretion to grant a new trial pursuant to Rule 33 [of the Federal Rules of Criminal Procedure] than to grant a motion for a judgment of acquittal pursuant to [Rule] 29 [of the Federal Rules of Criminal Procedure], where the truth of the prosecution's evidence must be assumed, that discretion should be exercised sparingly." *Id.*

Defendants assert, *inter alia*, that the state of the evidence at the conclusion of the trial is such that (1) with respect to Counts One through Five, no reasonable juror could have found that condition 4 of the Title V operating permit applied to the Defendants' alleged operation of a pressure relief valve ("PRV") in the by-products area at Tonawanda Coke; (2) the Indictment failed to allege a necessary element of the offense contained in Count Nine regarding the operation of quench tower #1 without baffles; (3) no proceeding was "pending" when the obstructive conduct alleged in Count Sixteen of the Indictment occurred; (4) the absence of a specific unanimity instruction as to what conduct constituted "active management" under Count Seventeen permitted the jurors to return a guilty verdict without simultaneously confirming that they had agreed unanimously as to the conduct that constituted "active management"; (5) the Court failed to instruct the jury that a necessary element of the offenses alleged in Counts Eighteen and Nineteen was an "intent to dispose" of the material at issue in those Counts; (6) the government offered no meaningful rebuttal to Defendants' affirmative defense as to Count

2

Eighteen; and (7) the jury was not properly instructed as to how to consider Defendants'

affirmative defense in its deliberations.  For these reasons, the Defendants' motion for a

judgment of acquittal or, in the alternative, motion for a new trial, must be granted.

**ARGUMENT**

**I.**   **Counts One Through Five**

   A.   *Condition 4 of Tonawanda Coke's Title V Operating Permit Only Applies to Emission*
        *"Sources," Not Emission "Points"*

Counts One through Five of the Indictment relate to Defendants' alleged operation of a

stationary source during the relevant time period from 2005 to 2009, in violation of Tonawanda

Coke's Title V operating permit requirements, "by emitting coke oven gas from a pressure relief

valve in the by-products department, an unpermitted emission source (Condition 4 of the

TONAWANDA COKE CORPORATION'S Title V permit)."  Based on the testimony in

evidence at the conclusion of the trial, no reasonable juror could have concluded that the Title V

permitting requirement cited by the Indictment (condition 4) applied to the Defendants'

operation of a PRV because condition 4 of Tonawanda Coke's Title V operating permit relates

solely to the operation of unpermitted emission "sources" and the PRV is a "point", not a

"source."[1]

      Both of the government's expert witnesses on the Clean Air Act[2] testified that, under

Title V, facility components are categorized as emission "units", emission "sources" or emission

_____

[1] Tonawanda Coke's Title V operating permit was admitted into evidence as government's
Exhibit 018.18.

[2] The government's expert witnesses included Al Carlacci, Regional Air Pollution Control
Engineer ("RAPCE") for the New York State Department of Environmental Conservation
("NYS DEC"), and Larry Sitzman, Director of Air Quality for the Bureau of Air Quality
Surveillance for the NYS DEC.  Defendants did not offer any expert witness testimony related to
the Clean Air Act.

133772.00601/36272310v.2

"points."  They further testified that emission sources are distinct from emission points and are

treated differently from one another under the Title V regulatory regime.  In his testimony, Mr.

Carlacci indicated that under the State's previous air pollution regulatory regime, the definitions

of emission point and emission source were identical but that the definitions changed upon the

enactment of the Title V permitting regime under the Clean Air Act.  Specifically, Mr. Carlacci

stated that the definition of an emission source under the current permitting regime is "an

apparatus or a machine that is capable of causing emission of any air contaminant to the outdoor

atmosphere," whereas an emission point is the "actual vent" or "the stack."  Mr. Sitzman further

testified that, under the New York Code Rules and Regulations, an emission "source" is different

than an emission "point."

Both Mr. Carlacci and Mr. Sitzman identified the PRV as an emission point, not an

emission source.  These witnesses further testified that condition 4 of the Title V operating

permit is expressly applicable only to unpermitted emission sources and not to emission points.

Accordingly, based on the testimony of the government's expert witnesses, condition 4 is not

applicable to the permitting of the PRV.  On these grounds, no reasonable juror could have found

that the government satisfied its burden of proving that the Title V permitting requirement cited

by the Indictment, condition 4, applies to the Defendants' operation of a PRV.  Thus, no

reasonable juror could have concluded that the Defendants operated an emission source in

violation of a Title V operating permit.

   B.  *The Testimony at Trial Failed to Establish the Applicability of the Terms of Condition
       4 to the PRV*

The government's expert witnesses on the Clean Air Act testified that condition 4 of

Tonawanda Coke's Title V operating permit is controlled by the conditional clause provided at

the outset of Item 4.1 to the Title V permit.  That is, condition 4 is only applicable "[i]f an

existing emission source was subject to the permitting requirements of 6 NYCRR Part 201 at the time of *construction* or *modification*, and the owner and/or operator failed to apply for a permit for such emission source."  Government's Exhibit 018.18, at p. 018.18-0009 (emphasis added).  In other words, in order to determine how condition 4 applies to an emission source, one must first determine the date of installation or the date of modification of the source.  Based on the testimony in evidence following the presentation of all the evidence at trial, no reasonable juror would have been able to make this determination with respect to the PRV that is the subject of Counts One through Five.  The government did not produce any evidence whatsoever regarding the date of installation of the PRV.  Indeed, the state of the testimony at the conclusion of the trial was that the PRV was present at the plant as far back as 1978, well prior to enactment of the Clean Air Act.

Moreover, the two government experts on the Clean Air Act contradicted themselves as to whether the PRV could be "modified" as that term is defined under the Title V permit.  According to the testimony, a modification is defined as "any physical change or method of operation of an incinerator, a stationary combustion installation, or a process."  Both Mr. Carlacci and Mr. Sitzman agreed that a PRV does not constitute an incinerator or a stationary combustion installation.  Mr. Carlacci testified that, in his opinion, a vent, such as a PRV, does not constitute a process and therefore could not be modified under condition 4.  Mr. Sitzman, on the other hand, testified that in his opinion, the PRV could qualify as a process and it was "modified" whenever its set point was adjusted.  Mr. Sitzman's testimony is inconsistent with the plain meaning of the term process.  Moreover, because of the contradiction between the testimony of Mr. Carlacci and the testimony of Mr. Sitzman, no reasonable juror could have found beyond a reasonable doubt that the PRV was modified such that condition 4 under Title V

5

would apply.[3]  Accordingly, the Defendants' motion for a judgment of acquittal as to Counts

One through Five must be granted.

## II.   __Count Nine__

Count Nine of the Indictment alleges that Defendants knowingly operated a stationary

source, in violation of Tonawanda Coke's Title V permit requirements, "by operating the

western quench tower (quench tower #1) without a baffle system installed in such quench tower

(Condition 96 of the TONAWANDA COKE CORPORATION'S Title V permit)" from on or

about January 1, 2008 to on or about December 31, 2008.  The uncontroverted testimony at the

conclusion of the presentation of all the evidence at trial was that the Defendants applied for and

were granted an exemption permitting the operation of quench tower #1 without baffles.  The

exemption was granted in a letter dated March 13, 1984, from the NYS DEC to Defendants, and

stated that the basis for granting the exemption was: (1) the "dimensions of the Quench Tower

would require a significant amount of expense for very little reduction in particulate control;"

and, (2) "the intermittent use of this emission point."  The letter noted that the conditions in

Tonawanda Coke's operating permit for quench tower #1 limited the tower's use to "less than

10% of the time."  _See_ Government's Exhibit 19.17.  The government acknowledged at trial and

the testimony established that, though the exemption was granted prior to the enactment of the

Title V regulatory regime, it continued to apply at the time Tonawanda Coke applied for a Title

---

[3] Even if a reasonable juror credited Mr. Sitzman's testimony as to the meaning of
"modification" with respect to the PRV, the government relied upon entries recorded in the
byproducts operator logbook to establish the dates on which the PRV set point was adjusted.  No
logbook entry was submitted into evidence prior to August 2006.  Accordingly, no reasonable
juror could have found that the government satisfied its burden of proof with respect to the
alleged unlawful operation of the PRV in 2005 and, as such, the Defendants' motion as to Count
One must be granted.

V permit and the exemption was mistakenly omitted from condition 96 to Tonawanda Coke's Title V operating permit once it was issued.[4]

Count Nine of the Indictment does not allege that the exemption to the baffles requirement for the operation of quench tower #1 was no longer in effect after the issuance of Tonawanda Coke's Title V permit in the Indictment with respect to Count Nine.  Nevertheless, the government acknowledged in its Response to Defendants' Motion for Judgment of Acquittal, filed March 19, 2013 [Docket No. 172], that under its "specific legal theory" with respect to Counts Six to Ten[5] it was required to offer proof to establish that the exemption was no longer in effect.[6]  Moreover, Jury Charge No. 39 ("Elements of the Offense Counts 6-10") of the Final Jury Instructions required a specific factual finding by the jury that the Defendants' alleged conduct in those Counts was "in non-compliance with any applicable exemption."

The government's stated position and the Court's instructions to the jury with respect to the elements of the offense for Counts Six through Ten clearly indicate that a necessary element of the offense of violating a Title V operating permit for operating the western quench tower without baffles was that the exemption to the baffles requirement was no longer in effect.  That is, the government was required to prove beyond a reasonable doubt that the exemption to the

---

[4] The NYS DEC issued Tonawanda Coke's Title V permit in 2002.  Mr. Sitzman testified that Tonawanda Coke's Title V permit was administratively extended by the NYS DEC for the period from 2007, after the five year permit term had ended, through the end of the time period relevant to the Indictment, as the NYS DEC reviewed Tonawanda Coke's renewal application.

[5] Defendants were acquitted of Counts Six through Eight and of Count Ten.  While the substantive allegations under Counts Six through Ten are identical, each Count applies to a different time period.  Count Nine alleges that the Defendants engaged in such conduct from on or about January 1, 2008 to on or about December 31, 2008.

[6] The government asserted however that the Indictment was not defective because it was permitted to present a "more narrow reading of counts 6 through 10 of the Indictment" at trial. Government's Response to Defendants' Motion for Judgment of Acquittal at p. 5.

baffles requirement no longer applied as a prerequisite to proving that operation of quench tower #1 without baffles was in violation of Tonawanda Coke's Title V operating permit.  No such allegation was included as an element in these counts of the Indictment.  "An indictment that does not set out all of the essential elements of the offense charged is defective." *United States v. Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012); *see also United States v. Miller*, 471 U.S. 130, 143 (1985) ("a court cannot permit a defendant to be tried on charges that are not made in the indictment against him").  Indeed, if an indictment does not state all of the essential elements of the offense, as is the case here, the defendant cannot be assured that he is being tried on the evidence presented to the grand jury, or that the grand jury acted properly in indicting him. *Gonzalez*, 686 F.3d at 127; *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000).  For this reason, no reasonable juror could have properly considered the application of the evidence as to the elements of the offense as alleged in Count Nine.  Accordingly, Defendants' motion for a judgment of acquittal as to Count Nine must be granted.

## III.   <u>Count Sixteen</u>[7]

Count Sixteen of the Indictment alleges that "[f]rom on or about April 14, 2009, to on or about April 21, 2009," the Defendants did "corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede, the due and proper administration of the law under which a pending proceeding was being had before the United States Environmental Protection Agency (EPA) . . . by instructing a TONAWANDA COKE CORPORATION employee to conceal, during an EPA inspection, the fact a pressure relief valve in the by-products department, during normal operations, emitted coke oven gas to the atmosphere" in violation of Tonawanda

---

[7] As Tonawanda Coke was acquitted of Count Sixteen, the Defendants' motion for a judgment of acquittal with respect to Count Sixteen only applies to Mr. Kamholz.

8

Coke's Title V operating permit.  This Count relates specifically to an alleged conversation that occurred between Mr. Kamholz and the Tonawanda Coke by-products foreman, Pat Cahill, regarding the operation of the PRV the Friday prior to the Tuesday start of the April 2009 joint U.S. Environmental Protection Agency ("EPA")—NYS DEC inspection of the Tonawanda Coke facility.

As the count in the Indictment and the language of 18 U.S.C. § 1505 make clear, a threshold requirement of §1505 is that a proceeding be "pending" at the time of the alleged offensive conduct.[8]  On November 3, 2010, Defense counsel submitted a letter to the government requesting voluntary discovery.  Defense counsel's letter included a request for particularization of the Indictment with respect to Count Sixteen, and specifically asked the government to identify the "proceeding" which was pending before the EPA at the time the alleged offense was committed.  A copy of the letter was annexed as Attachment 1 to Defendants' Joint Submission Regarding Defendants' Motion for Judgment of Acquittal, filed March 18, 2013 [Docket No. 171].

In a letter from defense counsel to Magistrate Judge H. Kenneth Schroeder, Jr., dated May 10, 2011, defense counsel reported to the Court on behalf of all the parties with respect to

---

[8] 18 U.S.C. §1505 provides in pertinent part:
> Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which *any pending proceeding is being had before any department or agency of the United States*, or the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress--
>
> Shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331 [*18 USCS § 2331*]), imprisoned not more than 8 years, or both.

18 U.S.C. §1505 (emphasis added).

progress made in resolving discovery issues since a March 7, 2011 hearing related to these issues. A copy of this report was annexed as Attachment 2 to Defendants' Joint Submission Regarding Defendants' Motion for Judgment of Acquittal. The report informed the Court that the government identified the "proceeding" as the joint inspection by the EPA and the NYS DEC that was conducted from April 14-21, 2009 in response to defense counsel's request for particularization. Defendants allow that the joint EPA—NYS DEC inspection constitutes a proceeding under this statute. However, the allegations contained in Count Sixteen of the Indictment and the testimony in evidence following the presentation of the evidence fail to establish that such a proceeding was pending on the date of Mr. Kamholz's alleged conversation with Mr. Cahill when the offending instruction is claimed to have been provided.

In addition to the government's own representation that the proceeding began on April 14, 2009, no proof was offered at trial for a reasonable juror to have found that a proceeding was pending prior to the April 14 date. In this regard, the evidence that Mr. Kamholz was notified of the planned start date of the inspection by the EPA in a letter dated April 8, 2009, fails to establish the pending proceeding element of Count Sixteen.[9] *See, e.g.*, *United States v. Smith*, 729 F. Supp. 1380 (D. D.C. 1990). In *Smith*, the court rejected the argument that a proceeding is pending when an individual is aware of an "imminent" investigation as this would lead to a "boundless" application of the obstruction of justice statute. While *Smith* concerned the application of 18 U.S.C. § 1503, the standard for the pending proceeding requirement under § 1503 is identical to the pending proceeding requirement of § 1505. *See, e.g.*, *United States v. Quattrone*, 441 F.3d 153, 170 n.18 (2d Cir. 2006) (noting that "[t]he parties treat the statutes [18

---

[9] A copy of the letter notifying Mr. Kamholz of the scheduled inspection was admitted into evidence as government's Exhibit 117.08.

U.S.C. § 1503 and § 1505] the same for analytical purposes, and we see no reason for taking a different tack"); *United States v. Sprecher*, 783 F Supp 133, 164 (S.D.N.Y. 1992) (applying the standards of 18 U.S.C. § 1505 to obstructive conduct alleged under 18 U.S.C. § 1503). Therefore, the fact that Mr. Kamholz was aware of the EPA's imminent inspection at the time of his alleged conversation with Mr. Cahill regarding the operation of the PRV is not sufficient to establish that a proceeding was pending at that time.

The Court in *Smith* relied in part on authority from the Second Circuit Court of Appeals, citing *United States v. Capo*, 791 F.2d 1054, 1070 (2d Cir. 1986), *vacated in part on other grounds,* 817 F.2d 947 (2d Cir. 1987) (*en banc*), for the rule that obstruction liability under 18 U.S.C. § 1503 is limited to conduct that relates to a "pending judicial proceeding." *Smith*, 729 F. Supp. 1380, 1383.  That holding was reaffirmed by the Second Circuit in *United States v. Biaggi*, 853 F.2d 89, 104 (2d Cir. 1988) (government required to prove that there was a pending proceeding to obtain conviction for obstruction under § 1503), and applied by the District Court for the Southern District of New York in *Sprecher*, *supra*.

Notably, all of the case authorities relied upon by the government in its response to Defendants' earlier Motion for Judgment of Acquittal [Docket No. 172 at pp. 6-9], concerned whether activities occurring before the commencement of a formal proceeding, if so identified, can qualify as a pending proceeding under 18 U.S.C. §1505.  This issue misses the point of Defendants' argument.  Here, the proceeding has been expressly and narrowly identified as the inspection itself.  Accordingly, the case authorities cited by the government in its earlier response are inapposite.

The government's particularization of Count Sixteen, and the testimony offered at trial, established that the proceeding which was the subject of Count Sixteen is the April 14-21, 2009

11

inspection.  Moreover, the testimony offered at trial established that neither criminal nor

administrative enforcement proceedings had been contemplated by the government at the time of

Mr. Kamholz's alleged obstructive conduct.  As the government's witnesses testified, the April

2009 inspection of the Tonawanda Coke facility was intended to follow up on results of regional

and national air quality studies that had brought Tonawanda Coke to the EPA's attention.

Enforcement actions were only considered after the inspection was completed.  The inspection

that took place from April 14-21, 2009 at Tonawanda Coke is the relevant proceeding with

respect to Count Sixteen, and the trial evidence demonstrated that the alleged obstructive conduct

occurred at least four days prior to the starting date of that proceeding.  Thus, while a proceeding

may have been "*impending*" at the time of Mr. Kamholz's alleged conversation with Mr. Cahill,

no proceeding was in fact "pending" under 18 U.S.C. § 1505.  Accordingly, a judgment of

acquittal must be entered as to Count Sixteen for Mr. Kamholz.[10]

---

[10] Section 1519 to Title 18 of the U.S. Code appears to have been enacted in part to address
precisely the conundrum that we have here, where the defendant's alleged conduct occurred
before the proceeding was pending.  According to the legislative history of § 1519, the statute
was drafted in such a manner that it would not suffer from the limitation of § 1503 (and by
extension, §1505) that a proceeding be already "underway" at the time of the alleged obstructive
conduct.  *See* 148 CONG. REC. S1785-86 (daily ed. March 12, 2002) (statement of Sen. Patrick
Leahy) ("Other provisions, such as Section 1503, have been narrowly interpreted . . . to apply
only to situations where the obstruction of justice may be closely tied to a judicial proceeding
that is already pending . . . [Under 18 U.S.C. § 1519] [t]here would be no technical requirement
that a judicial proceeding was already underway or that the documents were formally under
subpoena"); *see also Penalties for White Collar Crime: Hearing Before the Subcomm. on Crime
and Drugs of the S. Comm. on the Judiciary*, 107th Cong. 169 (2002) (statement of Michael
Chertoff, Asst. Att'y Gen., Criminal Div., Dep't of Justice,) Statement of Assistant Attorney
General Michael Chertoff at Senate Hearing 107-923, July 24, 2002 at p. 89 ("Under the current
statute [for obstruction of justice] . . . [a person] cannot be prosecuted unless a proceeding has
already begun.  The President has asked Congress to clarify this law so that it unambiguously
punishes all individuals who seek to interfere with law enforcement by removing or destroying
evidence").

IV.     **Count Seventeen**

Count Seventeen of the Indictment alleges that from on or about May of 1998 to on or about December 17, 2009, the Defendants stored a waste exhibiting the toxicity characteristic for benzene (D018), a hazardous waste under the Resource Conservation and Recovery Act ("RCRA"), on the ground adjacent to two large deteriorating tanks without a permit to store such hazardous waste as required under RCRA.  As to the first element of the offense alleged in Count Seventeen, the Court instructed the jury pursuant to Jury Charge No. 57 that it was required to find that the government established beyond a reasonable doubt "[t]hat the Defendant actively managed a waste after December 25, 1990."  This general instruction as to a finding of active management was inadequate.

As Defendants have previously submitted to this Court, in order to satisfy the constitutional imperatives regarding unanimous verdicts enunciated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny, as to the first element of the alleged offense, the jurors needed to confirm that they had agreed as to the specific activity that constituted active management of the D018.  Without a particularized confirmation of the jury's unanimous agreement as to what action constituted active management, Defendants are left with a record that allows for the possibility that some jurors determined that active management occurred by the placing of raw coke breeze on the ground adjacent to the tanks in 1998 while others determined that active management of the D018 only occurred at or around the time of the tank fire in 2008.[11]  This would not satisfy the requirement that the jury make a finding that the

---

[11] The jury's verdict form contained a separate question regarding the number of days that Defendants violated RCRA under Count Seventeen.  The jury's answer to that question, however, is insufficient to satisfy the constitutional requirement that a jury reach a unanimous decision with respect to each essential element of an alleged offense.  At best, the jury's answer to the question regarding the number of days of the violation is a finding from which one could speculate that the jury *may have* reached unanimous

13

government established the first element of the offense alleged in Count Seventeen beyond a reasonable doubt.  Accordingly, absent a unanimity instruction to the jury with respect to its finding of active management under Count Seventeen, Defendants' motion for a judgment of acquittal with respect to this Count must be granted.

## V.    Counts Eighteen and Nineteen

### A.    A Necessary Element of the Offenses Alleged in Counts Eighteen and Nineteen was that the Government Prove an "Intent to Dispose" of the Material at Issue in Each of Those Counts

In the Report, Recommendation and Order of the Magistrate Judge, filed February 21, 2012 [Docket No. 48], and accepted by the Court in a Text Order dated May 10, 2010 [Docket No. 54], the Court resolved that the issue of land disposal actually "turns on a determination of the defendant's intent, specifically, whether the defendant intended to dispose of the material." This holding was the principal basis upon which the Defendants' dispositive motions with respect to Counts 18 and then-Count 20 were denied by the Court.  *See* Report, Recommendation and Order at p. 17.  The Court further stated that "[m]atters involving a defendant's intent fall squarely within the province of the jury."  *See* Report, Recommendation and Order at p. 18.

In accordance with the Report, Recommendation and Order adopted by this Court, on March 14, 2013, Defense Counsel requested that the Court prepare an instruction requiring the jury to find that Defendants intended to dispose of the materials at issue in Counts Eighteen and Nineteen in order to reach a finding of "land disposal."  After brief consideration, the Court denied Defendants' request and advised the parties that it would not incorporate such an element into the instructions for Counts Eighteen and Nineteen.  Defendants renewed this request, and the

---

agreement as to the specific conduct that constituted "active management," but such speculation cannot satisfy the constitutional mandate requiring unanimous agreement.

Court again denied it, pursuant to their motion for a judgment of acquittal following the presentation of the government's case-in-chief.

Defendants now submit that, without an instruction requiring the jury to find that the government proved beyond a reasonable doubt that Defendants intended to dispose of the materials at issue in Counts Eighteen and Nineteen, a judgment of acquittal must be granted, as intent to dispose was a necessary element of the alleged offenses under the "law of the case" doctrine.  The branch of the law of the case doctrine applicable here provides that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise."[12]  *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (citing *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991), and quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)); *see, e.g., Bey v. I.B.E.W. Local Union #3*, 2009 U.S. Dist. LEXIS 3505, at *3-4 (S.D.N.Y. Jan. 7, 2009) (finding that the district court's adoption of a magistrate's recommendation constituted the law of the case); *Yash Raj Films, Inc. v. Bobby Music Co. & Sporting Goods, Inc.*, 2006 U.S. Dist. LEXIS 73305 (E.D.N.Y. Sept. 29, 2006) (finding that a prior Report and Recommendation prepared by a magistrate judge constituted the law of the case for all issues it addressed).  While Defendants acknowledge that the law of the case doctrine is discretionary, *see, e.g.*, *Aramony v. United Way of America*, 254 F.3d 403, 410 (2d Cir. 2001), a decision to disregard an earlier ruling is informed principally by (1) whether there has been an intervening change of controlling law; (2) new evidence is available; (3) there is a need to correct a clear error; or, (4) a party will

---

[12] The second branch of the law of the case doctrine is inapplicable here.  Under that branch of the doctrine, a trial court must follow an appellate court's ruling on an issue in the same case. *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (citing *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991)).

be prejudiced if the earlier decision is not applied.  *Uccio*, 940 F.2d at 757-58; *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

In the present case, there has been no intervening change of controlling law, no new evidence has been offered supporting a change in position from the Report, Recommendation and Order, and no argument has been made that this Court's adoption of the Report, Recommendation and Order constituted clear error.  By contrast, this Court's decision to disregard its earlier adoption of the Report, Recommendation and Order, has resulted in substantial prejudice to Defendants.  "'Prejudice' in this context does not mean harm resulting from the failure to adhere to the prior decision, but instead refers to a lack of sufficient opportunity to prepare armed with the knowledge that the prior ruling is deemed controlling." *United States v. Acquest Wehrle LLC*, 09-CV-000637C, 2010 U.S. Dist. LEXIS 99773, * 11 (W.D.N.Y. Sept. 23, 2010) (citing *Uccio*, 940 F.2d at 758).  As the Court adopted the Report, Recommendation and Order nine months before the start of trial, Defendants relied upon the Court's decision in preparing their trial strategy, witness examinations and defense arguments. The Court's sudden decision in the midst of trial to preclude an intent to dispose element in the jury instructions with respect to Counts Eighteen and Nineteen, contrary to the ruling of the Report, Recommendation and Order, undermined the Defendants' extensive preparation in advance of trial and put Defendants at a disadvantage with respect to witnesses who were questioned prior to the Court's decision.[13]  Indeed, Defense counsel made a point of questioning

---

[13] While the Court did not include an intent to dispose element in its preliminary instructions concerning Counts Eighteen and Nineteen at the outset of trial, the Court made no indication at that time that it had made a decision reversing the applicability of the Report, Recommendation and Order.  Indeed, to defense counsel's recollection, the Court acknowledged before its recitation of the elements of the offenses to the jury at the start of trial proceedings, that its instructions were intended to be general and preliminary, and that any of the parties' concerns regarding the more detailed charges to the jury would be addressed at a later date.

16

current and former Tonawanda Coke employees who were called by the government as witnesses in its case-in-chief as to the purpose of mixing the materials at issue in Counts Eighteen and Nineteen on the coal piles in the coal fields at Tonawanda Coke during the relevant time period.  This line of questioning was directly related to the Defendants' understanding that intent to dispose was a necessary element of "land disposal" pursuant to the Report, Recommendation and Order.

On these grounds, the Court's decision to disregard the Report, Recommendation and Order at a late stage in the trial resulted in clear prejudice to Defendants.  Accordingly, under the law of the case doctrine, the jury should have been required to find that the government established beyond a reasonable doubt that Defendants intended to dispose of the material at issue in Counts Eighteen and Nineteen.  Absent such a finding, the jury could not have concluded that the government satisfied its burden of proof with respect to all of the elements of the offenses in both counts.  Accordingly, Defendants' motion for a judgment of acquittal with respect to Counts Eighteen and Nineteen must be granted. [14]

B.   *No Reasonable Juror Could Have Failed to Credit Defendants' Affirmative Defense of Entrapment-by-Estoppel with Respect to Count Eighteen*

As this Court is aware, Defendants offered as a principal defense to the charges alleged by the government in its Indictment the affirmative defense of entrapment-by-estoppel.  Because Defendants made a *prima facie* showing of entrapment-by-estoppel during cross examination of witnesses produced by the government during its case-in-chief, the Court provided an instruction

---

[14] Defendants further submit that a judgment of acquittal must be granted as to each of the three RCRA counts contained in the indictment, as the Court's Order concerning the definitions of "land disposal" and "active management" filed February 25, 2013 [Docket No. 146], was erroneous for the reasons stated in Defendants' Joint Proposed Regulatory Definitions, filed February 8, 2013 [Docket No. 118].  As such, the use of these definitions at trial and by the jury in its deliberations infected the jury's findings on each of Counts Seventeen through Nineteen.

to the jury on this defense with respect to Counts One through Fifteen (Jury Charge No. 46), and

Counts Seventeen through Nineteen (Jury Charge No. 66).  Specifically, the Court instructed the

jury that it should acquit Defendants of the conduct alleged by the government pursuant to an

entrapment-by-estoppel defense if Defendants satisfied the following burden of proof by a

preponderance of the evidence:

> THE DEFENDANTS MUST SHOW THAT THEY REASONABLY RELIED
> ON THE STATEMENT OR CONDUCT OF A GOVERNMENT OFFICIAL
> WHEN THEY ENGAGED IN THE CONDUCT WITH WHICH THEY ARE
> CHARGED.  RELIANCE IS REASONABLE IF A PERSON SINCERELY
> DESIROUS OF OBEYING THE LAW WOULD HAVE ACCEPTED THE
> STATEMENT OR CONDUCT OF THE GOVERNMENT OFFICIAL AS TRUE
> AND WOLD NOT HAVE BEEN PUT ON NOTICE TO MAKE FURTHER
> INQUIRIES OF HIS OWN.
>
> THE DEFENDANTS MUST ALSO SHOW THAT THEY REASONABLY
> DISCLOSED THE CONDUCT ALLEGED IN THE INDICTMENT TO THE
> GOVERNMENT BEFORE OR AT THE TIME OF AUTHORIZATION. THAT
> IS, YOU MUST FIND A CONNECTION BETWEEN THE CONDUCT
> DISCLOSED BY THE DEFENDANTS AND THE CONDUCT THAT THE
> GOVERNMENT PURPORTEDLY AUTHORIZED.
>
> FINALLY, THE DEFENDANTS NEED NOT ESTABLISH THAT THE
> GOVERNMENT ACTUALLY AUTHORIZED THEIR CONDUCT.  THEY
> MUST ONLY ESTABLISH SEEMING AUTHORIZATION.  ACTUAL
> AUTHORIZATION IS NOT REQUIRED.
>
> THE BURDEN IS ON THE DEFENDANTS TO PROVE THE ENTRAPMENT-
> BY-ESTOPPEL DEFENSE BY A PREPONDERANCE OF THE EVIDENCE.

*See* Jury Charge No. 46.[15]

Count Eighteen of the Indictment alleges that from in or about June of 2009 to on or

about September 17, 2009, the Defendants knowingly disposed of D018 originating from in and

around the two large deteriorating tanks at Tonawanda Coke without obtaining a RCRA permit.

---

[15] Jury Charge No. 66, which related specifically to Counts Seventeen through Nineteen, adopted
the Court's previous instructions on the entrapment-by-estoppel defense contained in Jury
Charge No. 46 with respect to Counts One through Fifteen of the Indictment.

In support of its entrapment-by-estoppel defense, Defendants established on cross-examination of the government's witness that during a RCRA inspection of the Tonawanda Coke facility on June 17, 2009, Mr. Kamholz disclosed to Thomas Corbett, a RCRA inspector with the NYS DEC, and Lenny Grossman, an inspector with the EPA, the Defendants' plan to recycle the D018 situated in and around the deteriorating tanks at Tonawanda Coke by placing it on coal piles located in the coal fields before regenerating the D018 through the coking process.  Mr. Corbett testified that during the inspection, Mr. Kamholz took the inspectors to the coal field and explained how the mixing process on the coal piles worked.  Mr. Corbett further testified that his general practice was to inform a regulated entity that something was not in compliance prior to leaving the facility and that he did not do so in this instance, nor did he inform Mr. Kamholz that his plan to recycle the D018 material by first placing it on the coal piles in the coal fields could potentially constitute disposal of the D018 such that it would require a RCRA permit.  In fact, Mr. Corbett testified that he expressly withheld his concerns from the Defendants because he was directed by Mr. Grossman of the EPA not to say anything, even though this was in contravention of his usual practice.

Mr. Corbett testified that following the June inspection, the issue of the Defendants' recycling of the D018 by first placing it on the coal piles located in the coal field was discussed by the inspectors' supervisors at both the NYS DEC and the EPA.  Nevertheless, following these discussions, no concerns or objections were raised by the NYS DEC or by the EPA with Mr. Kamholz or anyone else at Tonawanda Coke regarding this practice even though both the NYS DEC and the EPA were well aware that Mr. Kamholz intended to proceed with his stated plan of placing the D018 on the coal piles in the coal fields before regenerating the mixture in the coke ovens.

Mr. Corbett then testified that a subsequent RCRA inspection was conducted by the NYS DEC and EPA on September 10, 2009 for the purpose of taking samples of the material in and around the deteriorating tanks.  At that inspection, Mr. Kamholz again disclosed to the inspectors that the facility was recycling the D018 by mixing it on the coal piles in the coal field before taking the mixture to the coke ovens and regenerating it as part of the coking process.  Though Mr. Kamholz specifically asked Mr. Corbett of the purpose of the September inspection, Mr. Corbett testified that neither he nor the EPA inspectors raised any concerns at that time with Mr. Kamholz about the facility's recycling of the D018 by mixing it on the coal piles in the coal fields.  According to Mr. Corbett's testimony, the reason Mr. Cobrett withheld such concerns from Mr. Kamholz was that the EPA had directed Mr. Corbett not to say anything because, even though the NYS DEC had already determined that the mixing of the D018 on the coal piles required a RCRA permit for disposal, the EPA was still in the process of "gathering information."  Mr. Corbett testified further that the EPA concluded its information gathering following the September 2009 RCRA inspection, at which point it reached the same determination as the NYS DEC that Defendants' placement of the D018 on the coal piles required a RCRA permit.  Even at this point however, Mr. Corbett testified that no one informed Mr. Kamholz or Tonawanda Coke of the agencies' determination that Defendants' conduct required a RCRA permit.

Based on Mr. Corbett's testimony, Defendants established that: (1) they disclosed the conduct alleged in Count Eighteen of the Indictment to the government; (2) the regulators, who were on site specifically to conduct a RCRA compliance inspection, seemingly authorized this conduct by not expressing any concern to the Defendants at any point during or subsequent to the two RCRA inspections they conducted at Tonawanda Coke in June and September 2009; and,

20

(3) Defendants had reason to rely on the regulators' "seeming" authorization of the conduct based upon Mr. Corbett's practice of informing regulated entities of concerns about non-compliance at the completion of an inspection or at the time that such concerns arose following an inspection.  The government offered no evidence to rebut this affirmative defense. Accordingly, even when viewed in the light most favorable to the government, it is uncontroverted that Defendants satisfied their burden of proof to establish their entrapment-by-estoppel defense with respect to Count Eighteen by a preponderance of the evidence.

In *Evans v. Michigan*, 133 S. Ct. 1069 (2013), the Supreme Court held that a motion for a judgment of acquittal under Fed. R. Crim. P. 29 is not limited to consideration of the state of proof with respect to elements of a particular offense.  Rather, an acquittal granted under Rule 29 is a judicial determination that goes to "the criminal defendant's lack of criminal culpability." *See Evans*, 133 S. Ct. at 1077.  Referring to *Burks v. United States*, 437 U.S. 1 (1978), the Supreme Court held in *Evans* that a motion for judgment of acquittal under Fed. R. Crim. P. 29 specifically applies to affirmative defenses.[16]  In *Burks*, the defendant raised a defense of insanity to the charges against him.  *See Burks*, 437 U.S. at 3.[17]  On appeal, the Sixth Circuit Court of

---

[16] At issue in *Evans* was whether or not the Double Jeopardy Clause bars retrial following the granting of a motion for acquittal when the basis for the order of acquittal is in error.  In reaching a determination on this issue, the Supreme Court discussed at length the proper grounds for the granting of a judgment of acquittal under Fed. R. Crim. P. 29, including the granting of a judgment of acquittal for the failure to rebut an affirmative defense.  *See Evans*, 133 S. Ct. 1077-78.

[17] While the Court of Appeals' decision in *Burks* related to consideration of the trial court's denial of defendant's motion for a new trial, the Supreme Court addressed the Court of Appeals' decision in relation to the granting of a motion for judgment of acquittal under Fed. R. Crim. P. 29.  Indeed, the Supreme Court noted that the Court of Appeals had decided that the government "had failed to come forward with sufficient proof of petitioner's capacity to be responsible for criminal acts" and that the court "was clearly saying that Burks' criminal culpability had not been established."  *Burks*, 437 U.S. at 10.  The Supreme Court went on to say that "if the District

21

Appeals held that the government failed to meet its burden of proving sanity once the *prima facie*

defense of insanity had been raised because, even when viewed in the light most favorable to the

government, the government did not "effectively rebut" defendant's proof with respect to

insanity and criminal responsibility.  *Id.* at 3-4.  Relying on *Burks*, the Supreme Court concluded

in *Evans* that a motion for judgment of acquittal must be granted when the government fails to

rebut an affirmative defense where the defendant has satisfied its burden of proof, because in

such an instance the affirmative defense "would negate culpability."  *Evans*, 133 S. Ct. at 1078;

*see also United States v. Malachowski*, 415 Fed. App'x. 307, 311 (2d Cir. 2011) (considering a

motion for judgment of acquittal made on the grounds that no reasonable juror could have failed

to credit defendants' affirmative defense of entrapment).

In this instance, it is uncontroverted that Defendants satisfied their burden of proof to

establish their entrapment-by-estoppel defense with respect to Count Eighteen by a

preponderance of the evidence.  The government failed to offer any meaningful rebuttal to this

affirmative defense.  Accordingly, no reasonable juror could have failed to credit Defendants'

affirmative defense.  On these grounds, the Court must grant Defendants' motion for judgment of

acquittal with respect to Count Eighteen.

## VI.    Failure to Properly Instruct the Jury as to the Affirmative Defense

At the Court's jury instruction conference, defense counsel requested that the Court

provide specific instructions to the jury as to how jurors should consider Defendants' affirmative

defense of entrapment-by-estoppel or, in the alternative, that the verdict form include a specific

interrogatory with respect to each count requiring the jury to make a finding as to whether

---

Court had so held in the first instance, as the reviewing court said it should have done, a
judgment of acquittal would have been entered."  *Id.* at 10-11.

133772.00601/36272310v.2

Defendants satisfied their burden to prove the affirmative defense.  The Court denied this request. The consideration of this issue included a discussion of *United States v. Bell*, 584 F.3d 478 (2d Cir. 2009), which was relied upon by defense counsel as support for providing the jury with some form of specific guidance regarding its consideration of Defendants' affirmative defense.

Defendants now submit that the failure to specifically instruct the jury as to how to consider Defendants' affirmative defense, in either the jury instructions or in a special verdict form, renders defective each of the jury's guilty verdicts save for its verdict with respect to Count Sixteen.  In *Bell*, the Second Circuit Court of Appeals overturned the District Court's granting of a new trial for failure to properly instruct the jury on its consideration of self-defense. In that case, the court reasoned that the jury instructions properly called attention to the issue of self-defense and its importance for deliberation because the jury was instructed that as to self defense "it may be helpful for you to resolve this question [of self-defense] at the outset of your deliberations."  *Bell*, 584 F.3d at 485.  Here, however, no such instruction was given to the jury. Indeed, nothing in the jury instructions or general verdict form called attention to how the jury, during deliberations, should consider Defendants' entrapment-by-estoppel defense, nor ensured that the jury actually rendered a determination as to whether Defendants had satisfied their burden of proof with respect to this defense.  This constitutes manifest injustice as proof of Defendants' affirmative defense by a preponderance of the evidence negates Defendants' culpability.  *See Bell*, 584 F.3d at 485 (motion for a new trial should be granted where there is "a real concern that an innocent person may have been convicted") citing *Sanchez*, 969 F.2d at 1414.  Accordingly, Defendants' request for a new trial as to Counts One through Five, Nine, Eleven through Fifteen and Seventeen through Nineteen must be granted.

133772.00601/36272310v.2

## CONCLUSION

For the reasons stated herein, Defendants request that the Court grant Defendants' motion for a judgment of acquittal pursuant to FED. R. CRIM. P. 29 or, in the alternative, Defendants' motion for a new trial pursuant to FED. R. CRIM. P. 33.

DATED:          Washington, D.C.
                April 11, 2013

                                        Respectfully submitted,

                                        /s/ GREGORY F. LINSIN
                                        Gregory F. Linsin, Esq.
                                        BLANK ROME LLP
                                        *Pro Hac Vice*
                                        *Attorney for Defendant*
                                        TONAWANDA COKE CORPORATION
                                        600 New Hampshire Avenue, N.W.
                                        Washington, D.C. 20037
                                        (202) 772-5813
                                        Linsin@blankrome.com

                                        /s/ JEANNE M. GRASSO
                                        Jeanne M. Grasso, Esq.
                                        BLANK ROME LLP
                                        *Pro Hac Vice*
                                        *Attorney for Defendant*
                                        TONAWANDA COKE CORPORATION
                                        600 New Hampshire Avenue, N.W.
                                        Washington, D.C. 20037
                                        (202) 772-5927
                                        grasso@blankrome.com

                                        /s/ ARIEL S. GLASNER
                                        Ariel S. Glasner, Esq.
                                        BLANK ROME LLP
                                        *Pro Hac Vice*
                                        *Attorney for Defendant*
                                        TONAWANDA COKE CORPORATION
                                        600 New Hampshire Avenue, N.W.
                                        Washington, D.C. 20037
                                        (202) 772-5963
                                        aglasner@blankrome.com

24

/s/ RODNEY O. PERSONIUS
Rodney O. Personius, Esq.
PERSONIUS MELBER LLP
*Attorney for Defendant*
MARK KAMHOLZ
350 Main Street
Buffalo, NY  14202
(716) 855-1050
rop@personiusmelber.com

133772.00601/36272310v.2

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April 2013, I electronically filed the foregoing

DEFENDANTS' JOINT MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE

ALTERNATIVE, MOTION FOR A NEW TRIAL with the Clerk of the District Court using the

CM/ECF system, which sent notification of such filing to the following CM/ECF participants on

this case:

Rocky Piaggione, Esq.                    Aaron J. Mango, Esq.
U.S. DEPARTMENT OF JUSTICE       Assistant United States Attorney
Environmental Crimes Section          UNITED STATES ATTORNEY'S OFFICE
P.O. Box 23985                        Western District of New York
L'Enfant Plaza Station                138 Delaware Avenue
Washington, DC  20026-3985        Buffalo, NY  14202
(202) 305-0321                       716-843-5882
Rocky.Piaggione@usdoj.gov        Aaron.Mango@usdoj.gov
***Counsel for the United States***      ***Counsel for the United States***

John J. Molloy, Esq.
4268 Seneca Street
West Seneca, NY 14224
(716) 675-5050
jmolloy@johnmolloylaw.com
***Counsel for Tonawanda Coke Corporation***

/s/ Gregory F. Linsin
Gregory F. Linsin, Esq.