IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
────────────────────────────────────

UNITED STATES OF AMERICA

    -v-                              10-CR-219-S

TONAWANDA COKE CORPORATION and
MARK L. KAMHOLZ

                   Defendants.
────────────────────────────────────

## GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION
## FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL

**THE UNITED STATES OF AMERICA,** by and through its attorney, William J. Hochul, Jr., United States Attorney for the Western District of New York, and Ignacia S. Moreno, Assistant Attorney General for the United States Department of Justice, Environment and Natural Resources Division, and the undersigned Assistant United States Attorney and Senior Trial Attorney, hereby submits this response in opposition to the defendants' motion for judgment of acquittal and for a new trial (Dkt. #197).

### BACKGROUND

The defendants, Tonawanda Coke Corporation ("Tonawanda Coke") and Mark L. Kamholz ("Kamholz"), each proceeded to trial on a 19-count Indictment (Dkt. #191).  Jury selection in this case commenced on February 26, 2013 (Dkt. #150).  During its case-in-chief, the government called 25 witnesses and rested on March 18,

2013.  On March 18, 2013, the defendants moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, which was opposed by the government.  <u>See</u> Dkt. ##171, 172.  On March 20, 2013, the Court denied the defendants' Rule 29 motion, after which the defendants called 4 defense witnesses and rested on March 25, 2013.  The government then called 1 rebuttal witness and rested on March 25, 2013.

On March 28, 2013, the jury found Defendant Tonawanda Coke guilty of 14 felony counts and Defendant Kamholz guilty of 15 felony counts.  Specifically, both defendants were found guilty of Counts 1 through 5 (violations of the Clean Air Act ("CAA") by emitting coke oven gas from an unpermitted emission source), Count 9 (violation of the CAA by operating the western quench tower without baffles), Counts 11 through 15 (violations of the CAA by operating the eastern quench tower without baffles), and Counts 17 through 19 (violations of the Resource Conservation and Recovery Act ("RCRA")).  Defendant Kamholz was additionally found guilty of Count 16 (obstruction of justice).  On April 11, 2013, the defendants filed the instant motion for judgment of acquittal and for a new trial on all counts of conviction (Dkt. #197-1) (hereinafter "Motion").  Several of the arguments made in the current Motion are identical to arguments made in support of the defendants' motion for a directed verdict at the close of the

government's case-in-chief.   The following is the government's response in opposition to the defendants' Motion.

## ARGUMENT

A defendant seeking a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure carries a "very heavy burden."  United States v. Losada, 674 F.2d 167, 173 (2d Cir. 1982).  In making this determination, the Court must view all of the evidence in a light most favorable to the government and make all permissible inferences in the government's favor.  See United States v. Cote, 544 F.3d 88, 93 (2d Cir. 2008).  "The question is not whether this [C]ourt believes that the evidence at trial established guilt beyond a reasonable doubt, but rather, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Mi Sun Cho, __ F.3d __, 2013 WL 1594173, *2 (2d Cir. Apr. 16, 2013) (internal citations omitted).

As the Second Circuit has observed:

We have emphasized that courts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal.  [United States v. Guadagna, 183 F.3d 122, 129 (2d Cir. 1999)] ("Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of ... the weight of the evidence and the reasonable inferences to be drawn for that of the jury.") (internal quotations omitted).  Indeed, it is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence.

United States v. Martinez, 54 F.3d 1040, 1043 (2d Cir. 1995).... Finally, we bear in mind that the jury's verdict may rest entirely on circumstantial evidence. Martinez, 54 F.3d at 1043.

United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003). Moreover, "pieces of evidence must be viewed not in isolation but in conjunction." United States v. D'Amato, 39 F.3d 1249, 1256 (2d Cir. 1994) (internal citations omitted).

Pursuant to Rule 33, the Court may grant a motion for a new trial "if the interest of justice so requires." "This rule 'confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.'" United States v. Polouizzi, 564 F.3d 142, 159 (2d Cir. 2009), quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992). In deciding a Rule 33 motion, the Court is entitled to "weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." Sanchez, 969 F.2d at 1413. However, it is well settled in the Second Circuit "that trial courts must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses," and it is "only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." Id. at 1414 (internal citations omitted). One such situation is where the "testimony is patently incredible or defies physical realities." Id.

- 4 -

I.    **Counts 1-5**

The defendants' argument for a judgment of acquittal on Counts 1 through 5 is based on the notion that the pressure relief valve ("PRV"), also known as the bleeder valve, is an emission point, rather than an emission source under the CAA and the New York Codes, Rules and Regulations ("NYCRR").  See Motion, pp. 3-4.  To advance their position, the defendants attempt to argue that Mr. Carlacci, and the government's other CAA expert, Larry Sitzman, both identified the PRV as an emission point, rather than an emission source.  The government's review of the trial transcript for Mr. Carlacci does not support the defendants' argument.  In fact, Mr. Carlacci testified that an emission source and an emission point, in certain circumstances, are interchangeable terms.  See Testimony of Carlacci, Feb. 28, 2013, Vol. II p. 168. Moreover, under the NYCRR, an "emission source" is defined as any "apparatus, contrivance or machine capable of causing emission of any air contaminant to the outdoor atmosphere."  6 NYCRR § 200.1(f).  During the testimony of Mr. Carlacci, he was asked directly whether the operation of the PRV would be in violation of Condition 4 of the permit, and Mr. Carlacci opined that it would be.  Id. at p. 217.  It is the recollection of the government that Mr. Sitzman was asked similar questions and provided similar responses.  Moreover, the determination of whether the PRV was an

emission source was a question of fact that was most appropriately reserved for the jury.  The jury heard evidence regarding the operation of the PRV over several weeks of trial, and then was provided with the definitions of the relevant terms from the NYCRR during the charge.  Based on the testimony and instructions, the jury concluded that the PRV was an emission source, and, when the proof is viewed in a light most favorable to the government, it cannot be said the jury acted unreasonably.

The defendants additionally argue that the evidence was insufficient to establish a violation of Condition 4 of the Title V permit (which relates to the operation of unpermitted emission sources) because the government failed to provide any information relating to the date of installation of the PRV or modifications that were made to the PRV.  See Motion, pp. 4-6.  The defendants' argument fails to account for the testimony of several Tonawanda Coke employees, who stated that at one time, the PRV was in a different location on the coke oven gas line.  Specifically, Pat Cahill testified that the PRV was in a different location and used Government Exhibit 50 to indicate the prior location.  See Testimony of Cahill, March 5, 2013, p. 29.  Likewise, Daniel Heukrath utilized Government Exhibit 50 to testify that in the 1980's, the PRV was in a different location, and that sometime later, the current PRV was constructed.  See Testimony of Heukrath,

March 15, 2013, pp. 13-15.   This testimony, coupled with the testimony of Mr. Carlacci and Mr. Sitzman that Part 201 of the NYCRR required air permit applications going back to the 1970's, was sufficient to establish a violation of Condition 4 of Tonawanda Coke's Title V permit.   Similarly, during the course of the trial there was testimony that the PRV was occasionally adjusted, and Mr. Sitzman testified that each adjustment to the PRV that resulted in increased air emissions would constitute a modification. Therefore, the jury drew reasonable inferences from the evidence, and there is no basis to overturn the defendants' convictions on Counts 1 through 5.

## II.   <u>Count 9</u>

The defendants' argument for a judgment of acquittal on Count 9 is premised on the notion that the Indictment in this case fails to allege that the defendants had an exemption to use the West quench tower less then 10% of the time without baffles.   However, the Indictment does allege that the defendants violated Condition 96 of their Title V permit, and during the course of the trial, there was testimony from Mr. Carlacci and Mr. Sitzman that use of the West quench tower 10% or more of the time would constitute a violation of Condition 96.

The defendants attempt to argue that somehow the Indictment fails to adequately state the elements of the offense, and cite to

Unites States v. Gonzalez, 686 F.3d 122 (2d Cir. 2012), United States v. Miller, 471 U.S. 130, 143 (1985), and United States v. Pirro, 212 F.3d 86, 92 (2d Cir. 2000).  These arguments are without avail as they ignore the settled case law that allows the government to present proof on a specific legal theory that is encompassed in the count in the indictment.  See United States v. Smith, 918 F.2d 1032, 1036 (2d Cir. 1990) (stating that "narrowing the scope of an indictment, whether through proof of a lesser offense offered at trial, or by redaction, does not offend the notice and review functions served by a grand jury's issuance of an indictment."); United States v. Miller, 471 U.S. 130, 137-40 (1985) (distinguishing between an impermissible constructive amendment, which broadens the charge beyond the terms of the indictment, and a permissible narrowing of the indictment).  In United States v. Wallace, 59 F.3d 333, 337 (2d Cir. 1995), the court upheld a conviction on a narrowed indictment, noting that where "charges are 'constructively narrowed' or where a generally framed indictment encompasses the specific legal theory or evidence used at trial, no constructive amendment occurs." (citations omitted).  In the present case, the government presented proof at trial regarding a more narrow reading of Count 9 of the Indictment, and based on that more narrow reading, the Court properly instructed the jury that to convict, it had to find that the defendants' operation of the

western quench tower was "in non-compliance with any applicable exemption."

Therefore, because the government has presented sufficient evidence, when viewed in a light most favorable to the government, to establish violations of Count 9 of the Indictment, the defendants' motion for a judgment of acquittal on this count should be denied.

## III. <u>Count 16</u>

Defendant Kamholz argues that a judgment of acquittal is required on Count 16 as the government has not established that there was a pending proceeding at the time of his obstructive conduct. <u>See</u> Motion, pp. 8-12. However, in making this argument, Defendant Kamholz gives little discussion to the fact that EPA, on April 8, 2009, e-mailed a letter to Defendant Kamholz in which he was informed that an inspection was to occur the following week, with the subject line "Clean Air Act (CAA) Compliance Investigation at Tonawanda Coke Corporation - Tonawanda, New York." <u>See</u> Government Exhibit 117.13. In fact, as part of this communication, Defendant Kamholz was explicitly instructed to begin obtaining records to be reviewed during the EPA inspection. <u>See</u> Government Exhibit 117.12. Moreover, undated handwritten notes of Defendant Kamholz were admitted into evidence during the trial which indicate

Defendant Kamholz's acknowledgment and ascertainment of some of the records requested by EPA.  <u>See</u> Government Exhibit 117.09.

At trial, Mr. Cahill testified that his conversation with Defendant Kamholz regarding the PRV occurred on the Friday before the inspection, which would have been April 10, 2009.  Based on the April 8, 2009 communication by EPA to Defendant Kamholz, it is the government's position that the proceeding was pending as of April 8, 2009.  The letter EPA sent to Defendant Kamholz informing him of the inspection, and the records to be reviewed, was issued pursuant to Section 114 of the CAA, which was discussed during the government's case-in-chief as providing the EPA with the authority to demand records from a CAA permitted facility.  In <u>United States v. Technic Services</u>, 314 F.3d 1031, 1044 (9th Cir. 2002), the court specifically held that an "investigation into a possible violation of the Clean Air Act ..., which could lead to a civil or criminal proceeding, 42 U.S.C. § 7413(b), (c) ... is a kind of proceeding." In <u>United States v. Adams</u>, 472 F.Supp.2d 811, 815-18 (W.D.Va. 2007), the court addressed the definition of "proceeding" in the context of a prosecution under 18 U.S.C. § 1505, and agreed with the Eighth Circuit by explaining that "[p]roceedings before a governmental department or agency simply mean proceeding in the manner and form prescribed for conducting business before the department or agency, including <u>all steps</u> and stages in such an

action from its inception to its conclusion." (emphasis added, quoting Rice v. United States, 356 F.2d 709, 712 (8th Cir. 1966)). Likewise, in United States v. Persico, 520 F.Supp. 96, 101 (E.D.N.Y. 1981), the court discussed the definition of proceeding under § 1505, and noted that the section was "intended to punish any obstruction of the administrative process ... at any stage of the proceedings, be it adjudicative or investigative. Congress did not limit the term 'proceeding' as used in s 1505 to only those acts committed after a formal stage was reached, and we cannot so limit the term." (emphasis added, quoting Rice, 356 F.2d at 712).

Undoubtedly, the April 8, 2009 letter to Defendant Kamholz from the EPA was the inception of the EPA's investigation and clearly informed Defendant Kamholz that an investigation under the Clean Air Act was underway as it contained instructions regarding actions to be taken by Defendant Kamholz prior to the physical commencement of the inspection.[1]  As such, there is no question that a proceeding was pending on April 8, 2009, which is two days before Defendant Kamholz allegedly instructed Mr. Cahill to conceal the emissions from the PRV.  It should also be noted that Defendant Kamholz was charged with aiding and abetting the obstruction of

---

[1] This is consistent with the pretrial correspondence provided by the government stating that "the specific date [Mr. Cahill] received the instruction from defendant Kamholz was a couple of days to a week prior to the inspection, but the specific date is unknown."  Dkt. 171-2, p. 11.

justice, which would capture the conduct of Mr. Cahill in raising the PRV setting each day of the EPA inspection.

Therefore, when the evidence presented at trial is viewed in a light most favorable to the government, there is no doubt that the jury had legally sufficient evidence to satisfy the requirement of a "pending proceeding" at the time of Defendant Kamholz's obstructive conduct, and as such, the defendants' motion for judgment of acquittal on Count 16 should be denied.

**IV.  <u>Count 17</u>**

In the Motion, the defendants argue that a judgment of acquittal on Count 17 is warranted because the Court's instruction as to a finding of active management was inadequate.  <u>See</u> Motion, pp. 13-14.  Citing to only <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the defendants assert that the jury should have been instructed that they needed to be unanimous as to the specific activity constituting active management.  This argument is completely without merit.

In situations where multiple predicates for guilt are offered by the prosecution to substantiate a single charge, the Second Circuit has consistently "held that as long as the jury receives a standard instruction as to unanimity, it is not reversible error if

a trial judge fails to charge the jury that it must be unanimous as to the specific act that serves as the basis for a guilty verdict." United States v. Dupre, 462 F.3d 131, 143 (2d Cir. 2006) (collecting cases).  In the present case, the jury was not only provided with a standard unanimity instruction during the charge, but the Court repeatedly instructed the jury as to unanimity and reasonable doubt during breaks in the trial.

Moreover, the evidence presented at trial was that in or about May of 1998, the defendants placed coke breeze over the surface of the hazardous waste.  In executing the verdict form for Count 17, the jury noted that the defendants committed the offense every day from May 31, 1998 to December 17, 2009.  See Dkt. #192, pp. 19-20. Therefore, by the very act of filling out the verdict from, the jury indicated its unanimous findings that the actions taken by the defendants in May of 1998 constituted active management. Therefore, because the Court properly instructed the jury as to rendering a unanimous verdict, the defendants' motion for a judgment of acquittal on Count 17 should be denied.

## V.   Counts 18 and 19

In the Motion, the defendants have again renewed their argument that the government was required to prove an "intent to dispose" element for the RCRA disposal counts of the Indictment,

and that the failure to do so warrants a judgment of acquittal on Counts 18 and 19.  <u>See</u> Motion, pp. 14-17.  This argument has been repeatedly rejected by the Court.

In <u>United States v. Laughlin</u>, 10 F.3d 961, 965 (2d Cir. 1993), the Second Circuit approved of a district court's jury instruction that articulated the elements of a RCRA offense as follows: (1) the defendants knowingly disposed, or caused others to dispose, a waste on or about the date set forth in the indictment; (2) that pursuant to RCRA, the waste was hazardous; (3) the defendant knew that the hazardous waste had a potential to be harmful to others or the environment or, in other words, it was not a harmless substance like uncontaminated water; and (4) the defendant did not have a permit or interim status to dispose of the hazardous waste under RCRA.  The court in <u>Laughlin</u> went on to discuss the parameters of the knowledge requirement under RCRA, and held that "it is clear that section 6928(d)(2)(A) requires only that a defendant have a general awareness that he is performing acts proscribed by the statute."  <u>Id.</u>

Here, the defendants have failed to cite to any case supporting their argument that there is an "intent to dispose" element as part of a RCRA violation, and instead, rely on the misguided belief that Magistrate Judge Schroeder ruled in his

- 14 -

Report and Recommendation that such an element is part of the charge.  However, in discussing whether pretrial dismissal of the RCRA disposal counts was warranted, Judge Schroeder was simply highlighting the arguments of the parties, and wrote, "[n]otably, the <u>defendant's</u> argument turns on a determination of the defendant's intent, specifically, whether the defendant intended to dispose of the material." Dkt. #48, p. 17 (emphasis added).  The Report and Recommendation did not go so far as to provide a pretrial ruling as to the elements of a RCRA disposal charge. Judge Schroeder only recited the positions of each side and made no formal finding of his own, and only ruled that these were questions of fact for the jury.  As such, there is no support in the defendants' argument that the "law of the case" doctrine applies, and therefore, judgment of acquittal is not appropriate because this Court properly instructed the jury as to the elements of the RCRA disposal counts.

The defendants additionally argue that Count 18 warrants a judgment of acquittal because no reasonable juror could have failed to credit their entrapment-by-estoppel defense.  <u>See</u> Motion, pp. 17-22.  The defendants highlight the testimony of retired RCRA Inspector Thomas Corbett in arguing that all of the elements of an entrapment-by-estoppel defense regarding Count 18 were met.  This argument ignores two basic points.  First, during the June 17, 2009

inspection conducted by Mr. Corbett, Defendant Kamholz simply disclosed that he was planning to recycle the contents of the Barrett tanks "into the coke ovens;" Defendant Kamholz did not disclose that the recycling was to occur on the ground. See Testimony of Corbett, March 12, 2013, p. 129. As the Court properly instructed the jury, to establish an entrapment-by-estoppel defense, the defendants were required to prove that they disclosed the conduct alleged in the Indictment before or at the time the government authorized the defendants to engage in such conduct. Clearly, the testimony established that the defendants did not fully disclose the conduct forming the basis for Count 18 to the government. Therefore, it was reasonable for the jury to reject the defendants' entrapment-by-estoppel defense regarding Count 18.

Second, the defendants failed to establish that the government authorized the specific conduct alleged in Count 18 of the Indictment. On June 17, 2009, Mr. Corbett testified that he was advised by Defendant Kamholz that the contents of the Barrett tanks were abandoned by a prior owner. See Testimony of Corbett, March 13, 2013, p. 135. With that knowledge, the RCRA inspectors then decided that they needed to sample the material from the Barrett tanks so that a proper RCRA analysis could be made as to the management of this material. There was no testimony that on the

day the RCRA inspectors first observed the material in the Barrett tanks, June 17, 2009, that they authorized the defendants to place the material on the ground.  In fact, except for statements made by Defendant Kamholz, they did not know what this material was.  Nor was there any testimony that on the day the RCRA inspectors sampled the material in the Barrett tanks, September 10, 2009, that they authorized the placement of the material on the ground.  Although the defendants argue that the government seemingly authorized the conduct at issue in Count 18, the jury acted reasonably in rejecting this argument as the testimony made clear that the government did not have enough information to authorize such conduct, as well as the fact that the defendants did not fully disclose such conduct to the government.

Here, as all twelve jurors polled indicated, the evidence presented at trial was more than sufficient to establish a basis for a rational person to find the defendants guilty of the RCRA counts in the Indictment.  For that reason, the defendants' motion for judgment of acquittal on the RCRA counts should be denied.[2]

_____

[2] In a footnote, the defendants additionally argue that the Court erroneously defined the terms "land disposal" and "active management" which "infected the jury's findings" regarding the RCRA counts.  See Motion, p. 17, n. 14.  The government submits that the Court's definitions of those terms were proper, and hereby incorporates by reference the arguments made in the Government's Response to Defendants' Joint Proposed Regulatory Definitions (Dkt. #124).

## VI.   <u>Instructions Regarding Entrapment-by-Estoppel Defense</u>

The defendants argue that the jury's verdict with respect to Counts 1-5, 9, 11-15, and 17-19 was defective because the jury was not provided with direction as to how they were to consider the defendants' affirmative defense of entrapment-by-estoppel.   <u>See</u> Motion, pp. 22-23.   According to the defendants, such "manifest injustice" requires the granting of a new trial on these counts. The defendants' argument is wholly without merit.

It is well settled in the Second Circuit that there is a "historical preference for general verdicts," and a "traditional distaste for special interrogatories."   <u>United States v. Coonan</u>, 839 F.2d 886, 891 (2d Cir. 1988).   One reason for the preference of general verdicts in criminal cases is that

> [t]o ask the jury special questions might be said to infringe on its power to deliberate free from legal fetters; on its power to arrive at a general verdict without having to support it by reasons or by a report of its deliberations; and on its power to follow or not to follow the instructions of the court.   Moreover, any abridgment or modification of this institution would partly restrict its historic function, that of tempering rules of law by common sense brought to bear upon the facts of a specific case.

<u>United States v. Ogull</u>, 149 F.Supp. 272, 276 (S.D.N.Y. 1957).   Even in cases in which the defendant has asserted an affirmative defense, use of a special interrogatory is disfavored.   <u>See</u> <u>United States v. Bell</u>, 584 F.3d 478, 484-85 (2d Cir. 2009) (rejecting the defendant's argument that the jury should have been provided a

special verdict form regarding his claim of self-defense); United States v. Ramirez, 537 F.3d 1075, 1083-84 (9th Cir. 2008) (same); and United States v. Jackson, 542 F.2d 403, 412-13 (7th Cir. 1976) (holding that it was not error for the court to refuse to submit a special interrogatory regarding the defendant's sanity, as it "would have served no useful purpose.").

In making their argument that the entrapment-by-estoppel defense should have been included as part of a special verdict form, or that the jury should have been instructed as to how to consider the defense, the defendants rely solely on the decision in Bell. However, the facts of Bell are completely at odds to the present case. In Bell, the defendant argued that he acted in self-defense when he fired shots at police officers executing a warrant. Bell, 584 F.3d at 482. Because it was the government that had the burden to prove that the defendant did not act in self-defense, the district court in Bell noted during the jury charge that "it may be helpful for you to resolve this question at the outset [of] your deliberations." Id. at 485. Put another way, the government's requirement to prove that the defendant acted intentionally was directly tied to the government's burden to show that the defendant did not act in self-defense, and for that reason, the court provided guidance to the jury as to how to consider the defendant's claim of self-defense.

Here, the burden to prove the entrapment-by-estoppel defense was the defendants, and unlike Bell, had no bearing on the *mens rea* for the CAA and RCRA offenses.  Moreover, the Court provided a forceful instruction on the entrapment-by-estoppel defense to the jury during the CAA charge, and then repeated portions of that instruction during the RCRA charge.[3]  There is no doubt that the jury was adequately informed of their ability to acquit the defendants if they found that the entrapment-by-estoppel defense had been met.  Beyond what the jury was provided during the charge, the jury did not need explicit guidance as to how to apply this defense, as such further commands would have intruded on the jury's historic function of arriving at a verdict based on common sense.  As such, there is no support for the defendants' argument that the Court's instruction to the jury constituted manifest injustice, and therefore, the defendants' motion for a new trial on this ground should be denied.

---

[3] The government notes that the Court's instruction was much more detailed than the following instruction provided in United States v. George, 386 F.3d 383, 397 (2d Cir. 2004), which the Second Circuit noted was proper:

If you believe that Mr. George was trying to comply with the law by following the instructions of the person to whom he submitted his passport application and you believe that a reasonable person desirous of obeying the law would have accepted those instructions as accurate, then you may not convict Mr. George based on the fact that the number was not his actual Social Security number.

**CONCLUSION**

For the foregoing reasons, the government respectfully submits that defendants' motion for judgment of acquittal and for a new trial on all counts of conviction should be denied in its entirety.

DATED:  Buffalo, New York, May 6, 2013.

Respectfully submitted,

WILLIAM J. HOCHUL, JR.
United States Attorney

*S/ AARON J. MANGO*

BY:   _____
AARON J. MANGO
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5882
aaron.mango@usdoj.gov

ROCKY PIAGGIONE
Senior Counsel
United States Department of Justice
Environmental Crimes Section
601 D Street, NW
Washington, DC 20004
(202) 305-4682
rocky.piaggione@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

        -v-                                          10-CR-219-S

TONAWANDA COKE CORPORATION and
MARK L. KAMHOLZ

                    Defendants.
_____


## **CERTIFICATE OF SERVICE**


        I hereby certify that on May 6, 2013, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL** with the Clerk of the District Court using its CM-ECF system, which would then electronically notify the following CM/ECF participants on this case:


                    Rodney O. Personius, Esq.

                    Gregory F. Linsin, Esq.

                    Jeanne M. Grasso, Esq.

                    Ariel S. Glasner, Esq.

                    John J. Molloy, Esq.


                        ***S/ AARON J. MANGO***
                        _____
                        AARON J. MANGO


- 22 -